# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# DOCKET NO: 5:19-CV-00063-MOC

| | |
|---|---|
| TRACI IRELAND, | ) |
| Plaintiff, | ) |
| vs. | ) **ORDER** |
| ANDREW M. SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on judicial review of a final decision of the Commissioner of Social Security denying Plaintiff Traci Ireland's applications for disability insurance benefits and supplemental security income. Plaintiff filed a Motion for Summary Judgment, requesting an order of reversal or a remand for rehearing. (Doc. No. 10). The Commissioner in turn filed his Motion for Summary Judgment, requesting affirmance. (Doc. No. 12). For the following reasons, the Court denies Plaintiff's motion, grants the Commissioner's motion, and affirms the Commissioner's finding of non-disability.

## I. BACKGROUND

### A. Administrative Exhaustion

In September 2016, Plaintiff filed applications for disability insurance benefits under Title II, and supplemental security income under Title XVI, of the Social Security Act (the "Act"), alleging she had been disabled since May 31, 2016. (Tr. 125). Plaintiff's claims were denied initially and upon reconsideration, so she filed a written request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on September 6, 2018, for de novo consideration of Plaintiff's claims. (Id.). On November 8, 2018, the ALJ issued a decision,

concluding Plaintiff was not disabled within the meaning of the Act. (Id.). The Appeals Council denied Plaintiff's request for review on March 14, 2019, rendering the ALJ's decision final and thus reviewable by this Court. (Tr. 1). Plaintiff has exhausted available administrative remedies, so this case is ripe for judicial review, pursuant to 42 U.S.C. § 405(g).

### B. Sequential Evaluation Process

The Act provides that "an individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see id. § 423(d)(1)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. §§ 404.1520, 416.920. The claimant "bears the burden of production and proof during the first four steps of the inquiry." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant carries its burden through the fourth step, the burden shifts to the Commissioner to

show other work exists in the national economy that the claimant can perform.  See id.

    **C.**    **The Administrative Decision**

The issue before the ALJ was whether Plaintiff was disabled from May 31, 2016, the alleged disability onset date, to the date of the decision. Using the sequential evaluation process, the ALJ concluded at step five that Plaintiff was not disabled within the meaning of the Act.

To begin, the ALJ recognized at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 128). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: sciatica, status-post back surgery, obesity, cirrhosis (advanced fibrosis), anxiety, depression, status-post opioid abuse disorder, degenerative disc disease, and fibromyalgia. (Id.). The ALJ also determined that Plaintiff suffered from hypertension, but that her hypertension was a non-severe impairment. (Id.).

At step three, the ALJ decided Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Id.). Next, the ALJ found Plaintiff had the residual functional capacity to perform light work, as defined in 20 C.F.R. §§ 404.1567 and 416.967, except she could: frequently handle, reach, finger, and feel bilaterally; and could perform "simple, routine, repetitive tasks" consistent with unskilled work. (Tr. 129). Furthermore, the ALJ restricted Plaintiff to work environments that do not involve interactions with the public, constant changes in routine, complex decision-making, or crisis situations. (Id.). Finally, the ALJ restricted Plaintiff to staying on-task for two hours at a time, and to occasional interactions with supervisors and coworkers. (Id.).

Based on these findings, the ALJ concluded at step four that Plaintiff was unable to perform past relevant work as an administrative clerk or commercial cleaner. (Tr. 134). Still, at step five, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the

national economy, including: shipping and receiving weigher/checker, non-postal mail clerk, and checker. (Tr. 135–36). Because such work existed, the ALJ held that Plaintiff was not disabled within the meaning of the Act. (Tr. 136).

## II. DISCUSSION

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

When reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Courts do not conduct de novo review of the evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Instead, our inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla evidence but may be less than a preponderance." Id. The Court will not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Id. (alterations omitted). Put simply, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record

4

should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (explaining courts do not "min[e] facts from the [administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

Plaintiff asserts the ALJ made two errors in finding she was not disabled under the Act. First, the ALJ failed to resolve an apparent conflict between occupational evidence provided by a vocational expert and the Dictionary of Occupational Titles ("DOT"). Second, the ALJ failed to explain how it weighed the psychiatric evaluation of Dr. Carla Duszlak. As discussed below, the Court disagrees with both contentions and therefore affirms the ALJ's finding of non-disability.

A. **Apparent Conflict**

When evaluating disability under the Act, the ALJ "has a duty to identify and resolve any apparent conflicts between the DOT and a vocational expert's testimony." Lawrence v. Saul, 941 F.3d 140 (4th Cir. 2019); see SSR 00-4P, 2000 WL 1898704, at *4 (Dec. 4, 2000). "To that end, the ALJ must ask the [vocational expert] whether his or her testimony conflicts with the DOT. If the answer is 'yes,' the ALJ 'must elicit a reasonable explanation for the conflict before relying on' the testimony. But even if the [vocational expert] answers 'no,' the ALJ has an affirmative 'duty to make an independent identification of apparent conflicts.' This means the ALJ must recognize and resolve ways in which a [vocational expert's] testimony 'seems to, but does not necessarily,' conflict with the 'express language' of the DOT—even if the conflict is not

5

'obvious.'" Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir.), as amended (Feb. 22, 2019) (citations omitted).

Here, Plaintiff contends that the ALJ failed to resolve an apparent conflict between the vocational expert's testimony and the DOT. Specifically, Plaintiff asserts those sources apparently conflict as to whether an individual who is limited to "simple, routine, repetitive tasks" can perform DOT Level 2 and Level 3 reasoning occupations. The Court disagrees.

The vocational expert testified that a significant number of jobs exist for an individual who is limited to "simple, routine, repetitive tasks," including: shipping/receiving weigher/checker, non-postal mail clerk, and checker. The "Checker I" occupation demands Level 2 reasoning, which requires an employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and to] [d]eal with problems involving a few concrete variables in or from standardized situations." DOT, App. C., 1991 WL 688702. By contrast, the "Shipping and Receiving Weigher/Checker" and "Mail Clerk" occupations demand Level 3 reasoning, which requires an employee to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and to] [d]eal with problems involving several concrete variables in or from standardized situations." Id.

This Court has consistently held there is no apparent conflict between Level 2 reasoning and "simple, routine, repetitive tasks." See, e.g., Courtney v. Colvin, No. 2:12-CV-73, 2014 WL 1882583, at *3 (W.D.N.C. May 12, 2014); Pippen v. Astrue, No. 1:09-CV-308, 2010 WL 3656002, at *7 (W.D.N.C. Aug. 24, 2010), adopted, No. 1:09-CV-308, 2010 WL 3655998 (W.D.N.C. Sept. 15, 2010). Recently, in Lawrence v. Saul, the Fourth Circuit agreed. See 941 F.3d at 140. The Court explained that tasks involving "a few concrete variables" accords with "routine, repetitive tasks." Id. Also, "uninvolved" and "simple" tasks harmoniously connote instructions that "are

6

not complicated or intricate." Id. (quoting Moore v. Astrue, 623 F.3d 599, 603 (8th Cir. 2010)).

Similarly, this Court has held there is no apparent conflict between Level 3 reasoning and "simple, routine, repetitive tasks." See, e.g., Carringer v. Colvin, No. 2:13-CV-27, 2014 WL 1281122, at *3 (W.D.N.C. Mar. 27, 2014); Thacker v. Astrue, No. 3:11-CV-246, 2011 WL 7154218, at *3 (W.D.N.C. Nov. 28, 2011), adopted, No. 3:11-CV-00246, 2012 WL 380052 (W.D.N.C. Feb. 6, 2012). Again, in Lawrence, the Fourth Circuit favorably cited Sawyer v. Colvin, a Seventh Circuit decision holding the same. See 941 F.3d at 140 n.8. In Sawyer, the Court reasoned that "even workers who are markedly limited in their ability to understand, remember, and follow detailed instructions might still be able to perform jobs requiring Level 3 reasoning development." 512 F. App'x 603, 611 (7th Cir. 2013); see also Hillier v. Soc. Sec. Admin., 486 F.3d 359, 366 (8th Cir. 2007) (also recognizing that a claimant could perform Level 3 reasoning despite being limited to a "simple, concrete work").

In sum, there is no apparent conflict between finding that an individual who is restricted to "simple, routine, repetitive tasks" can nevertheless perform DOT Level 2 and Level 3 reasoning occupations. Thus, the ALJ did not err in failing to address the purported conflict.

### B. Weight of Evidence

When assessing a claimant's residual functional capacity, pertinent regulations require the ALJ to render a decision "based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945 (emphasis added). The ALJ's ultimate decision "must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (alterations and internal quotation marks omitted). An accurate and logical bridge must consider both favorable and unfavorable evidence; in other words, the ALJ "cannot simply cherrypick facts that support a

7

finding of non-disability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (citation omitted).

Here, Plaintiff asserts the ALJ failed to explain the weight that it assigned to a May 2017 psychiatric evaluation of Plaintiff, which was conducted by Dr. Duszlak. (Tr. 598). Plaintiff identifies several portions of Dr. Duszlak's report that were material to the disability decision. First, Dr. Duszlak diagnosed Plaintiff with panic disorder, persistent depressive disorder with major depressive episodes with current episode mild severe, Xanax use disorder, and opioid use disorder in full sustained remission. (Tr. 601). Because of these disorders, the doctor opined that Plaintiff's work "[a]ttendance could be a problem[,] especially if she has panic attacks or does not want to get out of bed because of depression." (Tr. 602).* Dr. Duszlak also noted that Plaintiff was not attending counseling, but that she might benefit from visiting a mental health center. (Tr. 599–602).

In his decision, the ALJ explicitly noted that Dr. Duszlak was concerned about Plaintiff's depression and panic attacks and about the fact that she was not seeing a psychiatrist. (Tr. 131). Discrediting those concerns, the ALJ explained that "[m]ore recent mental health notes indicate that [Plaintiff] eventually sought mental health care" and that "none of [her] providers expressed concern regarding [her] ability to function or note an opinion regarding [her] ability to perform basic work activities." (Tr. 132). In fact, a March 2018 treatment assessment found that Plaintiff had "no new complaints and was doing well." (Id. (quoting Tr. 770)). It is certainly logical for the ALJ to credit the newer assessments—which was conducted after Plaintiff received

---

* The Government also argues that Dr. Duszlak's suggestion that there "could" be a problem with work attendance is "speculation," not evidence, which the ALJ was not obliged to consider, and which was insufficient to meet claimant's burden to establish how a medically determinable impairment affects her functioning. (Doc. No. 13 at 13). Because the Court finds that the ALJ did consider this opinion, the Court declines to consider whether the ALJ was required to do so.

mental healthcare—rather than Dr. Duszlak's older assessment. Finding a logical nexus and substantial basis for the ALJ's decision, the Court thus rejects Plaintiff's contention.

## III. CONCLUSION

The undersigned has carefully reviewed the ALJ's decision, the administrative record, and the briefs. Review of the entire record demonstrates that the ALJ's decision is supported by substantial evidence. See Richardson, 402 U.S. at 390; Hays v. Sullivan, 907 F.2d 143, 1456 (4th Cir. 1990). Because the Court finds there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401 (internal citations omitted), the Commissioner's finding of non-disability is affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that: the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**; Plaintiff's Motion for Summary Judgment (Doc. No. 10) is **DENIED**; Defendant's Motion for Summary Judgment (Doc. No. 12) is **GRANTED**; and this action is **DISMISSED**.

Signed: December 12, 2019

Max O. Cogburn Jr
United States District Judge